## McPHERSON *vs.* L. M. *&* S. RATHBONE.

A party wishing to avail himself in evidence of a paper in the possession of
the *attorney* of his adversary, must give *notice* to produce it ; he cannot
have the benefit of the evidence by *subpœnaing* the attorney to produce it,
and compelling him to testify, if it was delivered to him by his clients, as
supporting the action or defence.

Notice to produce a paper in evidence, given a few minutes before called for,
is not sufficient, unless it be shewn to be in court.

*Parol evidence* of the contents of a paper required to be produced on the trial
of a cause cannot be given, until its genuineness be established by proof ;
if a paper is produced on notice, such proof is not necessary.

The declarations of one of several partners cannot be given in evidence to
prove a partnership ; they are testimony only against the party making
them.

THIS was an action of assumpsit, tried at the Albany cir-
cuit, in September, 1829, before the Hon. WILLIAM A. DUER,
then one of the circuit judges.

The plaintiff proved the sale of a quantity of segars in Sep-
tember, 1825, and of another quantity in July, 1826, to the
firm of *Lyman Rathbone & Co.,* by the admission of *Lyman
Rathbone,* made on the 1st March, 1827, when he gave a note
to the plaintiff for the balance claimed to be done, viz. $161,89,
and signed the same with the name of *Lyman Rathbone & Co.*

The plaintiff called Joel Rathbone to prove that the firm of *Lyman Rathbone & Co.* was composed of the defendants in this cause, to wit, *Lyman* Rathbone, *Moses* Rathbone, and *Samuel* Rathbone ; he testified that in the year 1826 an *article of copartnership* between the members of the firm of *Lyman Rathbone & Co.* was sent by that firm to a mercantile house of which he was a member; that he had it in his possession for some time, but what had become of it he could not say, though he had no recollection of re-delivering it to the firm of Lyman Rathbone & Co.; he had looked for it, but could not find it. An attorney of Joel Rathbone testified that the paper in question had been delivered to him by his client or his partner, but that he had re-delivered it to the person from whom he had received it. The judge decided that the evidence did not sufficiently prove the loss of the paper to authorise parol evidence of its contents. The plaintiff then offered to prove the partnership of the defendants by giving evidence of a written instrument of the dissolution of their partnership, dated in August, 1826, and for this purpose produced an affidavit of F. A. Tallmadge, Esq. the attorney of the defendants, in which he stated, that in March, 1828, he shewed to one of the plaintiff's attornies a document purporting to be a *deed of dissolution* of the partnership of *Lyman Rathbone & Co.*, which he did for the purpose of satisfying him that such partnership had been dissolved at the date of the instrument; and that in February, 1829, when this cause was noticed for trial, he delivered the instrument to the counsel of the defendants, which was the last he had seen of it. The counsel testified that after the circuit in February, 1829, he re-delivered to the attorney the papers he had received from him. The affidavit of Mr. Tallmadge had been obtained under these circumstances: he had been subpœnaed by a *subpœna duces tecum* to appear and produce the deed of dissolution at the trial of the cause ; he had attended court, and by the consent of the plaintiff, had made his affidavit, to be read on the trial subject to all legal exceptions. The counsel for the defendants objected to the affidavit being read, on the ground that it disclosed confidential communications from clients to their attorney, and that evidence of the contents of the deed of dissolution was inadmis-

sible until *notice* to produce it had been given ; the judge per-- mitted the affidavit to be read as far forth as by doing so no confidential communications would be disclosed ; but after hearing it read, he decided that parol evidence of the contents of the deed of dissolutions could not be given without notice to produce it. The court took a recess, and *five minutes* before the recommencement of the trial a *notice* was served on the *counsel* of the defendants to produce the deed. The judge held the notice sufficient, ruling that the defendants' *attorney* having made a deposition, must be deemed present in court, and that if the deed of dissolution was not in his possession, it must be considered as having been *lost* in passing between him and his counsel, and that therefore parol evidence of its contents was *admissible*. Whereupon the plaintiff's attorney produced a copy of the instrument shewn him by Mr. Tallmadge, which purported to be a deed of dissolution signed by the defendants, dated 15th August, 1826, certifying that the partnership theretofore existing between them had been dissolved by mutual consent. The counsel for the defendants objected to this evidence, on the ground that it was not proved that the paper shewed to the plaintiff's attorney was a genuine instrument, or that Mr. Tallmadge had received it from either of his clients ; the objection was overruled, and the paper read in evidence. Joel Rathbone also testified that he had seen a paper similar to that of which a copy had been produced, in the hands of *Lymam Rathbone*, that it had the signature of *Samuel Rathbone* to it, that Lyman told him he had received it of Samuel, and was taking it to Buffalo to be signed by the other partners of the firm of *Lyman Rathbone & Co.*; this evidence also was rejected to. The jury, under the charge of the judge, rendered a verdict for the plaintiff for the amount of his demand, which was now moved to be set aside.

*J. P. Cushman*, for defendants.

*J. King*, for plaintiff.

*By the Court*, SAVAGE, Ch. J.   The point to be proved was that the defendants were partners. The plaintiff failed in his attempt to prove the articles of copartnership. He then un-

dertook to prove the partnership by shewing the instrument dissolving the partnership. The defendants' attorney had been subpœnaed to produce it. He testified, though his evidence was objected to, that he had delivered such a paper to the plaintiff's attorney. The court were correct in excluding testimony of a *confidential* character. If the paper in question was delivered by the clients to their attorney as a paper relating to the defence in the cause, it was a confidential communication, which the witness could not be permitted to disclose, and therefore it could not be introduced in evidence by the plaintiff. If a plaintiff desires to prove a paper of that kind in possession of the defendant or his attorney, *notice* must be given to produce it. The defendant's attorney did not state how the paper came into his possession, but being an instrument affecting the defendants in the suit, the presumption is that he received it from them; it could not be produced in evidence by force of the subpœna *duces tecum.*

The plaintiff's attornies served a notice on the defendants' counsel pending the trial to produce the paper. Had the paper been in court, such notice would have been sufficient, but had it been in the possession of the defendant or his attorney at a distance from the place of the sitting of the court, it clearly was not sufficient. The judge considered it sufficient, on the ground that the attorney had testified that he could not find it, and from the facts stated, the judge came to the conclusion that it was lost or destroyed; and it is contended by the plaintiff's counsel that the *subpœna* to the defendants' attorney operated as a *notice* to produce the paper. The attorney by the subpœna, was treated as a witness, and not as the representative of his client; for aught that appears in this case, the document may have been in the possession of the party, and in that case the notice was not sufficient.

Had the instrument been produced by the defendant on the call of the plaintiff, no further proof of its execution would have been necessary, it being one under which the defendants claimed an interest; but as it was not produced, it became necessary to prove its genuineness—assuming, for argument's sake, that the notice was sufficient. Joel Rathbone swears that he once saw such a paper, signed by *Samuel Rathbone*

NEW-YORK, alone; but that does not identify the paper called for; it was
May, 1831. in the possession of Lyman Rathbone, but the witness could
Alderman not say that it was the paper afterwards in the hands of the
v. defendants' attorney, and of which the plaintiff's attorney was
Share. permitted to take a copy. Proof of the execution of a paper
resembling that of which a copy was taken, signed by one only
of the parties purporting to have executed it, is too loose; the
paper which the plaintiff's attorney saw is therefore not prov-
ed. If it was the client's paper, confidentially in the hands of
his attorney, as I think it was, the proper way to bring it into
court was by notice.

The declarations of Lyman Rathbone were improper, and
unavailing: improper, because they could not be received on
the ground that a partnership existed, when the object was
thereby to prove the partnership; unavailing, because the fact
of partnership was in dispute, and could not be proved by dec-
larations which were totally inadmissible upon any other as-
sumption than that a partnership existed and had been shewn.
The declarations of one of several partners cannot be given in
evidence to prove a partnership, only as against the person
making them. The judge erred in instructing the jury to find
a verdict upon such testimony.

New trial granted, costs to abide the event.