MATHIASEN v. BARKIN et al.

(Supreme Court, Appellate Division, First Department. June 7, 1901.)

1. MECHANICS' LIENS—NOTICE—EVIDENCE.

The evidence for defendant in a suit to enforce a mechanic's lien for terra cotta used in a building showed that all the materials furnished by plaintiff were in place prior to September 1st, and that notice of the lien was not filed until the succeeding 7th day of February. A witness for plaintiff testified that he placed a block of terra cotta in the building about the middle of November, or as soon as the front wall was up, which was shown to have been in August. The block of terra cotta was not shown to be included in that for which plaintiff claimed his lien, and the witness had not placed other terra cotta in the building. There was no evidence as to when the building had been completed. Held not sufficient to show that notice of the lien was filed within 90 days of the furnishing of such item of material or of the completion of the work, as required by Laws 1897, c. 418.

2. PARTNERSHIP—PROOF OF PARTNERSHIP—DECLARATIONS.

Declarations of an alleged partner, in the absence of a person claimed to be his partner, in purchasing materials for a house to be constructed on the property of the latter, are not sufficient proof of the partnership to render the latter liable therefor.

3. EXECUTORY CONTRACTS—RIGHTS OF ACTION.

An executory contract between a vendor and vendee, in which the latter agrees that he will enter into a subsequent agreement to assume the payment of goods which have been purchased by the former from A. on the final closing of the title to the premises sold, does not render the vendee liable to A. in the absence of the assumption of such indebtedness in a subsequent contract.

Appeal from special term, New York county.

Action by Karl Mathiasen against Samuel Barkin and others to foreclose a mechanic's lien. From a judgment of the special term of the supreme court in favor of plaintiff, defendant Barkin appeals. Reversed.

Argued before HATCH, McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Roger Foster, for appellant.
Frank M. Avery, for respondent.

INGRAHAM, J. The action was brought to foreclose a mechanic's lien, which was filed on February 7, 1900. The complaint alleges that the appellant was the owner of certain real property in the city of New York; that the defendants Barkin and Kaplan were partners in erecting the building on said premises, and that prior to the 18th

day of May the defendant Goodman was the owner of said premises, and contracted with the plaintiff, whereby the plaintiff agreed to furnish and deliver to said Goodman certain architectural terra cotta to be used in the building to be erected upon the said premises; that in April, 1899, the defendant Goodman entered into an agreement with the defendant Barkin, acting for himself and the defendant Kaplan, whereby the defendant Goodman agreed to sell, transfer, and convey the said property to the defendant Barkin, and that subsequently Goodman and wife duly conveyed the property to Barkin by deed dated May 15, 1899; that Barkin, for himself and on behalf of Kaplan, agreed both in writing and orally to pay the sum of $800, the contract price to be paid for the architectural terra cotta to be delivered and furnished by the plaintiff for use in the building to be erected upon the lot so conveyed, and further agreed to pay such sum of $800 when the said terra cotta should be delivered; that thereafter, and about the 25th of May, 1899, the plaintiff contracted with the defendants Barkin and Kaplan, whereby the plaintiff agreed to deliver certain additional terra cotta at an agreed price of $220; that the said materials were furnished for the improvement of the real estate described, and were so furnished with the consent and at the request of the defendant Barkin, and that Barkin and Kaplan were indebted to the plaintiff in the sum of $720 at the time of the filing of the mechanic's lien; that on or about February 7, 1900, and within 90 days after the final furnishing of the materials aforesaid, the plaintiff caused the lien to be filed. The answer admits the ownership of the premises, and denies the other material allegations of the complaint. The court found that the defendants Kaplan and Barkin were co-partners in the erection of these buildings; that the terra cotta embraced within the original order for $800 and the additional order of $220 was actually used in the construction of the building erected upon the premises; that Kaplan was not an independent contractor with the defendant Barkin; that the said terra cotta was furnished for the improvement of the real property described in the complaint, and was actually used in the building erected, and that the same was furnished with the knowledge and consent of the owner thereof, the defendant Barkin, and at the request of the defendant Kaplan, acting on behalf of himself and his partner, the defendant Barkin; that the plaintiff, by the filing and docketing of the mechanic's lien mentioned in the complaint, acquired a valid lien on the premises; and judgment was entered directing a sale of the premises. . It seems that the plaintiff made a contract with Goodman to supply the terra cotta for $800, but thereafter, and before any of the goods were delivered, Kaplan called upon the plaintiff, saw the plaintiff's representative, and told him that he had bought the property in Henry street of Mr. Goodman, and had assumed the terra cotta contract that Goodman had made with the plaintiff; that he (Kaplan) was going to pay for the terra cotta; that he had assumed the contract of $800 for the terra cotta; that the plaintiff told Kaplan that it was none of plaintiff's business what Kaplan had agreed to pay Goodman, and that the plaintiff would look to Goodman for the payment. At the time of this interview plaintiff's representative supposed that the person with whom

he was talking was Barkin, but it appeared that it was Kaplan, and plaintiff had no interview with Barkin until after the material was furnished. Subsequently the plaintiff sold to Kaplan the extra terra cotta at an agreed price of $220. After this conversation the terra cotta was delivered at the building. When the plaintiff had rested, there was no evidence as to the time when this building was completed, or when the terra cotta furnished by the plaintiff had been actually delivered, and the defendant then moved to dismiss the complaint upon the ground that it did not appear that the last item of material was furnished within 90 days prior to the filing of the lien. That motion was denied, and the appellant excepted. The defendant then proved that all of the terra cotta for which the plaintiff claimed to recover was furnished before the 22d or the 23d of August, 1899. There was not the slightest evidence of any co-partnership between Barkin and Kaplan, except the declarations of Kaplan made in the absence of Barkin, and such co-partnership was expressly denied by both Barkin and Kaplan. Nor was there any evidence to show that Barkin ever authorized Kaplan, as his agent, to purchase any goods from the plaintiff, or from anybody else, or to make any contracts for him. In rebuttal the plaintiff recalled a witness named Skov, who had before been examined by the plaintiff. Upon his original examination he had testified that, after all of the terra cotta had been delivered, he had a conversation with Barkin and Kaplan at the building, and shortly after that conversation he received a check for $300 on account of the terra cotta furnished. He testified to nothing as to the time when the terra cotta was all furnished, or when the contract was complete. When he was recalled, he testified that he remembered taking a piece of terra cotta up to the building in the middle of November, and that men under his superintendence put it in place. On cross-examination he said that they had no contract to set the terra cotta; that they did not set the terra cotta in the whole building, "except that piece, only that particular piece," which was a piece of molding on the first floor. There was no evidence as to the time when the building was finally completed.

By section 10 of the lien law (chapter 418, Laws 1897) it is provided:

"The notice of lien may be filed at any time during the progress of the work and the furnishing of the materials, or within ninety days after the completion of the contract, or the final performance of the work, or the final furnishing of the materials, dating from the last item of work performed or materials furnished."

There is no evidence to sustain a finding that this lien was filed within the time prescribed by the statute. The evidence of the defendant is undisputed that the terra cotta furnished by plaintiff was all in place by the latter part of August. The evidence produced by the plaintiff in rebuttal that a piece of terra cotta was put in this building in November was not sufficient to show that any item of work performed or materials furnished for which the plaintiff seeks to sustain this action was furnished at that time. It is not alleged that this one piece of terra cotta was any part of the terra cotta that the plaintiff had contracted to deliver for the building, or was in-

cluded within the terra cotta for which this lien is filed. So far as appears, it was entirely an independent work. The witness did not specify the exact time, but said it was in the middle of November, but as soon as the front was up; and the evidence is uncontradicted that the front was all up in August. Nor do I think that there is any evidence to show that this appellant made any contract or agreement to purchase this property, or was liable to the plaintiff therefor. The liability of the defendant is, by the complaint, based entirely upon the allegation of the co-partnership of Barkin and Kaplan, and that Barkin made a contract with the plaintiff under which this terra cotta was delivered. The plaintiff proved a contract with Goodman; that after that contract was made, and before the terra cotta was delivered, Kaplan came to plaintiff, made certain representations as to his relations with Barkin, and procured the terra cotta to be furnished, saying that he had assumed the payment for the terra cotta. There is not the slightest evidence to show that he had any authority to make any representations as to his relations with Barkin, or to purchase this terra cotta on his behalf. The appellant and Kaplan both swore that Kaplan was to build this building, according to contract, for $30,000, and that the appellant had paid to Kaplan the $30,000; but, assuming that the court refused to find that there was such a contract, there was nothing to justify a finding that Kaplan was authorized to make contracts on behalf of Barkin, or to bind him in any way in the purchase of materials for the building. Certainly, Kaplan's declarations as to his relations with Barkin were not competent evidence to prove such relations made in the absence of Barkin, and without his knowledge. Nothing is better settled than that the authority of an agent to bind his principal cannot be proved by the representations of the agent; and there is no evidence, except the representations of Kaplan, that any co-partnership or agency existed. Nor did the executory contract between Barkin and Goodman, dated April 29, 1899, make Barkin liable to the plaintiff for the $800. By the contract for the conveyance of the premises it was agreed that the respective parties would enter into an agreement simultaneously with the closing of the title, to the effect that the appellant would assume and agree to pay the sum of $800, being the contract price for architectural terra cotta, to be furnished by Karl Mathiasen. This was a provision in an executory contract between Goodman and Barkin, by which Barkin, as a part of the contract to purchase this property, was to agree to assume the contract with the plaintiff. The evidence is uncontradicted that no contract to carry this provision into effect was ever made. The plaintiff was not a party to the contract, had no knowledge of it, and when Kaplan informed him that he (Kaplan) had assumed or was to assume the contract between the plaintiff and Goodman, the plaintiff expressly repudiated such assumption, told Kaplan it was none of the plaintiff's business what Kaplan had agreed to pay Goodman; that the plaintiff would look to Goodman for payment. Assuming that the plaintiff could accept this as an agreement by Kaplan to pay for these goods, there was nothing to justify the plaintiff in holding the appellant personally liable. The appellant made no agreement with the plaintiff to pay for the goods. He never, as a

fact, assumed the obligation of the contract between the plaintiff and Goodman. The whole strength of the plaintiff's case must be based upon the authority of Kaplan to bind the appellant by a contract to purchase goods for this building, and I can find nothing in the evidence to justify a finding of such authority. The only evidence of the relation between Kaplan and the appellant is the agreement of Kaplan to build the house for $30,000, and, in the absence of proof that any amount is due on that contract, the plaintiff would not acquire a lien upon the premises. The court has found that no such a contract existed, and, assuming that such finding was based upon sufficient evidence, the case is then left entirely bare of any evidence as to the relation between Kaplan and the appellant, and as to any authority by Kaplan to make contracts for the purchase of materials for the defendant. It is quite evident that the plaintiff did not furnish this terra cotta relying upon either Kaplan's or Barkin's obligation to pay for it. They expressly repudiated any obligation of Kaplan or the appellant, and stated that they would look to Goodman for payment; and certainly, in the absence of any evidence to show an authority upon Kaplan's part to contract for the appellant, no contract that Kaplan made can be enforced against him. The learned justice, in his opinion, stated that both Kaplan and Barkin, the appellant, had made statements at different times to employés of the plaintiff to the effect that they were partners, but I have searched the record in vain for any statement by Barkin that he was a partner, or that Kaplan had any authority to make contracts for him, and no such testimony is referred to by the respondent in his brief submitted upon this appeal.

I think the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.